AMIN TALATI WASSERMAN LLP
William P. Cole, Bar No. 186772
515 South Flower St., 18th Floor
Los Angeles, CA 90071
Tel:  (213) 933-2330
Fax:  (312) 884-7352
william@amintalati.com

AMIN TALATI WASSERMAN LLP
Jonathan Krit, *pro hac vice* forthcoming
Manon Burns, Bar No. 347139
549 W Randolph St., Ste. 400
Chicago, IL 60661
Tel: (312) 466-1033
Fax: (312) 884-7352
jonathan@amintalati.com
manon@amintalati.com

Attorneys for Plaintiff
Biomax Health Products LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BIOMAX HEALTH PRODUCTS LLC, a Delaware limited liability company,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>PERFECTX USA, a business entity of unknown type and organization,<br><br>　　　　　　Defendant. | Case No.: 3:23-cv-02834<br><br>**[PROPOSED] ORDER GRANTING PLAINTIFF'S APPLICATION FOR ENTRY OF TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE** |

THIS CAUSE is before the Court on Plaintiff's Application for Entry of a Temporary Restraining Order and Order to Show Cause why a Preliminary Injunction Should not Issue (the "TRO Application"). Plaintiff moves for entry of a temporary restraining order, and, upon, expiration of the temporary restraining order, a preliminary injunction against Defendant Perfectx USA pursuant to Fed. R. Civ. P. 65.

For the reasons set forth herein, Plaintiff's TRO Application is GRANTED.

## FACTUAL BACKGROUND

Plaintiff Biomax is a distributor of topical analgesic products, cosmetics, and dietary supplements, and is the exclusive distributor of PENETREX® joint and muscle topical cream products. Compl. ¶¶ 8, 19; Declaration of Rachel Sexton ("Sexton Decl.") ¶ 3. Since at least as early as December 1, 2007, Plaintiff has marketed and sold its products under the brand name PENETREX® (the "PENETREX® Word Mark") using a unique trade dress (the "PENETREX Trade Dress"). Compl. ¶ 21; Sexton Decl. ¶ 5. Plaintiff owns all right, title, and interest to U.S. Trademark Registration No. 4,156,859 for the PENETREX® Word Mark in International Class 005 which grants Plaintiff the right to exclude others from using confusingly similar marks on topical analgesic creams and related goods and services. *Id.* ¶ 27; Sexton Decl. ¶ 10. The PENETREX® Word Mark trademark application was filed on July 15, 2011, with a claimed first use date of at least as early as December 1, 2007. Compl. ¶ 28; Sexton Decl. ¶ 11. The PENETREX® Word Mark was registered on June 12, 2012, and its Declaration of Incontestability was accepted on July 31, 2017. Compl. ¶ 28; Sexton Decl. ¶¶ 11-12. In May of 2022, Plaintiff additionally began marketing and selling its topical cream products in association with the PENETREX Design Mark, ▬▬▬▬▬▬▬. Compl. ¶ 33; Sexton Decl. ¶ 15 (collectively, the PENETREX® Word Mark, PENETREX Trade Dress, and PENETREX Design Mark are referred to as the "PENETREX Trademarks").

In or around February of 2023, Defendant began marketing and selling PERFECTX-branded topical cream products, through, *inter alia*, Amazon and Facebook, as well as numerous other websites. Compl. ¶ 33; Sexton Decl. ¶ 23. Defendant's topical cream goods are highly related to the topical cream products sold under the PENETREX Trademarks. Compl. ¶ 42. Defendant's topical

cream products are sold to the same consumers seeking Plaintiff's products, through the same trade channels (i.e., Amazon) and advertised through the same marketing channels (i.e., Facebook advertising) as Plaintiff's topical cream goods. Compl. ¶ 43; Sexton Decl. ¶ 23. Defendant's and Plaintiff's products are relatively inexpensive. Compl. ¶ 44; Sexton Decl. ¶¶ 24-27.

Defendant's PERFECTX products intentionally mimic Plaintiff's PENETREX Trademarks and the overall trade dress of Plaintiff's PENETREX products. Compl. ¶ 47.




**Plaintiff's PENETREX® Intensive Concentrate Cream**

**Defendant's PERFECTX Intensive Concentrate Cream**

Defendant's PERFECTX-branded product design is nearly identical to that of Plaintiff's PENETREX® intensive concentrate cream, including the PENETREX® Word Mark, PENETREX Design Mark, and PENETREX Trade Dress. Compl. ¶ 48. Defendant's PERFECTX-branded products are of a significantly lower quality than Plaintiff's PENETREX® products and have received numerous consumer reviews critical of the product quality. Compl. ¶¶ 49-50; Sexton Decl. ¶¶ 28-30.

Defendant has marketed its PERFECTX-branded products through numerous channels, including through, *inter alia*, Facebook advertisements. Compl. ¶ 53; Sexton Decl. ¶ 32. Several of Defendant's advertisements for PERFECTX products include images appropriated from Plaintiff's advertisements and show individuals holding Plaintiff's PENETREX® Intensive Concentrate Cream

[PROPOSED] ORDER GRANTING PLAINTIFF'S APPLICATION FOR ENTRY OF TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE

instead of Defendant's PERFECTX-branded cream. Compl. ¶ 54; Sexton Decl. ¶¶ 33-34. The copy in Defendant's ads, however, is supplied by Defendant's over Plaintiff's images.

Defendant makes outlandish claims regarding the efficacy of its PERFECTX products. *Id.* ¶ 56; Sexton Decl. ¶ 35. Defendant's advertisements depict its product curing severe orthopedic conditions. Compl. ¶ 57; Sexton Decl. ¶ 36. One of Defendant's pages on Facebook.com describes the PERFECTX product as: "A magical healing cream that eliminates joint inflammation and other orthopedic issues in as little as three weeks!" Compl. ¶ 58; Sexton Decl. ¶ 37. Moreover, Defendant's advertisements and product packaging state that the products are manufactured in the United States, when they are actually manufactured in China. *Id.* ¶ 60; Krit Decl. ¶ 11.

Plaintiff Biomax has received multiple reports from consumers who have been confused regarding Plaintiff and Defendant's topical cream products. Compl. ¶ 64; Sexton Decl. ¶ 42. Moreover, consumers have complained directly to Plaintiff and publicly written bad reviews concerning their disappointment with the low quality and ineffectiveness of Defendant's products, assigning blame to Plaintiff for Defendant's defective goods. Compl. ¶ 65; Sexton Decl. ¶ 43. Plaintiff observed a sharp increase in Defendant's infringing activity in the weeks after Plaintiff's PENETREX® products were endorsed on the website of Shape Magazine, a popular, nationally distributed publication directed to wellness. Sexton Decl. ¶ 46. Shape published a positive review of the PENETREX® Intensive Concentrate Cream product on its website on May 9, 2023. *Id.* ¶ 47. Subsequently, Plaintiff observed a proliferation of storefronts on Amazon selling the infringing PERFECTX-branded products. *Id.* ¶ 48.

## CONCLUSIONS OF LAW

The declarations Plaintiff submitted in support of its TRO Application support the following conclusions of law:

A.   Plaintiff has a very strong probability of proving at trial that consumers are likely to be confused by Defendant's advertisement, promotion, sale, offer for sale, and/or distribution of topical cream products that bear – either individually or collectively – an infringing PERFECTX mark, infringing design mark, and infringing trade dress.

B. Plaintiff has a very strong probability of proving at trial that Defendant has unfairly competed with Plaintiff.

C. Plaintiff has a very strong probability or proving at trial that Defendant has falsely advertised its PERFECTX-branded products.

D. Because of the infringement of Plaintiff's PENETREX Trademarks and false advertising of its PERFECTX-branded goods, Plaintiff is likely to suffer immediate and irreparable injury if a temporary restraining order is not granted. It clearly appears from the following specific facts, as set forth in Plaintiff's Complaint, TRO Application, and accompanying declarations on file that immediate and irreparable loss, damage, and injury will result to Plaintiff and to consumers before Defendant can be heard in opposition unless Plaintiff's TRO Application is granted:

1. Defendant is operating Internet businesses which advertise, offer for sale, and sell topical cream products bearing infringing trademarks in violation of Plaintiff's rights;

2. There is good cause to believe that more infringing topical cream products bearing infringing trademarks will appear in the marketplace; that consumers will be misled, confused, and disappointed by the quality of these products; and that Plaintiff may suffer loss of sales for its products;

3. There is good cause to believe that if the Court delays in granting Plaintiff's TRO Application, Defendant can easily thwart Plaintiff's ability to obtain meaningful relief by modifying its ecommerce information;

4. The balance of potential harm to Defendant in restraining its trade in infringing goods if a temporary restraining order is issued is far outweighed by the potential harm to Plaintiff and its reputation and goodwill as a manufacturer of quality topical cream products if such relief is not issued; and

5. The public interest favors issuance of the temporary restraining order in order to protect Plaintiff's trademark interests and protect the public from being defrauded.

Upon review of Plaintiff's Complaint, TRO Application, and supporting evidentiary submissions, it is hereby

ORDERED that Plaintiff's TRO Application is GRANTED, according to the terms set forth below:

**TEMPORARY RESTRAINING ORDER**

(1) Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with Defendant having notice of this Order are hereby temporarily restrained:

    a. From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing a mark that is identical or confusingly similar to the PENETREX Trademarks identified in the Complaint in this matter; and

    b. From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products bearing marks that are identical or confusingly similar to the PENETREX Trademarks, (ii) any evidence relating to the manufacture, importation, sale, off er for sale, distribution, or transfer of any products bearing marks that are identical or confusingly similar to the PENETREX Trademarks

(2) Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with Defendant having notice of this Order shall immediately discontinue the use of marks that are identical or confusingly similar to the PENETREX Trademarks, on or in connection with all Internet websites owned and operated, or controlled by them or in connection with any ecommerce platforms owned by third parties where Defendant offers goods for sale;

(3) Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with Defendant having notice of this Order shall immediately discontinue the use of marks that are identical or confusingly similar to the PENETREX Trademarks in association with ecommerce websites, domain name extensions, metatags, or other markers within website source code, from use on any

webpage (including as the title of any web page), any advertising links to other websites, from search engines' databases or cache memory, and any other form of use of such terms which is visible to a computer user or serves to direct computer searches to websites registered by, owned, operated, or controlled by Defendant or in connection with any ecommerce platforms owned by third parties where Defendant offers goods for sale;

(4) Any Internet marketplace website operators and/or administrators, and any third-party providing services in connection with Defendant or any of Defendant's infringing products, including without limitation, Amazon.com, eBay.com, and Facebook.com, which are provided with notice of this temporary order by Plaintiff shall immediately disable service to any and all listings of any infringing product;

(5) This Temporary Restraining Order shall remain in effect until the date for the hearing on the Motion for Preliminary Injunction set forth below, or until such further dates as set by the Court or stipulated to by the parties;

**PRELIMINARY INJUNCTION**

(6) A hearing is set before this Court in the United States Courthouse located at Courtroom 1 – 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102 via Zoom on Friday, June ____ , 2023 at 10:00 am or at such other time that this Court deems appropriate, on Plaintiffs Motion for a Preliminary Injunction restraining Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with Defendant from engaging in the activities that are subject of the above Temporary Restraining Order;

(7) Plaintiff shall serve a copy of the TRO Application and this Order on Defendant via its only available address, the San Franciso address provided in ¶ 9 of the Complaint. Such notice so given shall be deemed good and sufficient service thereof. Any response or opposition to Plaintiffs Motion for Preliminary Injunction must be filed and served on Plaintiff's counsel forty-eight (48) hours prior to the hearing set for Friday, June ____ ,

- 7 -

2023 at 10:00 am and filed with the Court, along with Proof of Service. Plaintiff shall file any Reply Memorandum on or before _____, 2023. The above dates may be revised upon stipulation by all parties and approval of this Court. Defendant is hereby on notice that failure to appear at the hearing may result in the imposition of a preliminary injunction against it pursuant to Fed. R. Civ. P. 65.

IT IS SO ORDERED.

DATED:_____                    _____

                                                                                                                                                                                 UNITED STATES DISTRICT JUDGE