UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BIOMAX HEALTH PRODUCTS LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>PERFECTX USA,<br><br>    Defendant. | Case No. 23-cv-02834-SI<br><br>**TEMPORARY RESTRAINING ORDER**<br><br>Re: Dkt. No. 12 |

Before the Court is plaintiff's motion for a temporary restraining order. Dkt. No. 12. For the reasons discussed below, the motion is **GRANTED.**

## BACKGROUND

Plaintiff alleges as follows. Plaintiff Biomax Health Products LLC markets and sells topical joint and muscle therapy cream under the PENETREX mark. Complaint, Dkt. No. 1, at ¶ 21. Plaintiff has registered the PENETREX word mark. Id. ¶¶ 26–29. Since May 2022, Plaintiff has marketed its products with what it calls the PENETREX Design Mark, which consists of a thick line with color bands of varying thickness in dark red, dark blue, gray, blush, dark red, gray, and dark blue. Id. ¶¶ 33–36. Plaintiff's most popular product is its PENETREX Intensive Concentrate Cream. Id. ¶¶ 37–39. The Intensive Concentrate Cream is sold in a white, cylindrical jar with rounded edges. Id. ¶ 38. The label consists of a white background and, from top to bottom, the color band, "Penetrex®" in large, bold, black font, "INTENSIVE CARE CREAM" in all capital letters in smaller black font, "Joint & Muscle Therapy" in bold dark red font, and a description of some ingredients and the size of the contents in much smaller black font. Id. The fonts used are all sans

serif. *Id.*

Beginning around February 2023, defendants began marketing and selling a topical cream under the name PERFECTX Intensive Concentrate Cream. Id. ¶ 40. Like the PENETREX® Intensive Concentrate Cream, the PERFECTX cream comes in a white, cylindrical jar with rounded edges. Id. The label consists of a white background and, from top to bottom, the color band, "Perfectx" in large, bold, black font, "INSTENSIVE CONCENTRATE CREAM" in all capital letters in smaller black font, "Joint & Bone Therapy" in bold dark red font, and a description of ingredients and the size of the contents in much smaller black font. Id. The fonts used are sans serif and strikingly similar to the fonts used on the label of the PENETREX Intensive Care Cream. Id.

Plaintiff and defendant market and sell their products through the same channels, such as Amazon and Facebook ads. Id. ¶ 43. Both products are "relatively inexpensive." Id. ¶ 44. Defendant has appropriated images from plaintiff's advertisements to use in its own and has made "outlandish and false claims of efficacy" of its products. Id. ¶ 54–58. Plaintiff alleges that defendant's products are "of a significantly lower quality" than plaintiff's and that confusion of the products has harmed plaintiff's reputation and sales. Id. ¶¶ 49–52. Plaintiff also alleges defendant falsely claims its product is made in the United States. Id. ¶¶ 60–62.

Plaintiff alleges defendant has willfully confused consumers, who have written to plaintiff complaining of the poor quality of defendant's products. Id. ¶¶ 63–65.

Plaintiff filed the complaint on June 8, 2023. Plaintiff brings federal claims for trademark infringement, unfair competition, and false advertising, and California claims for violation of the California UCL, California false advertising law, and California common law. *Id.* ¶¶ 69–131. On June 22, 2023, plaintiff filed a motion for preliminary injunction and a declaration explaining plaintiff's attempts to serve defendants. Dkt. Nos. 12, 14. Per the affidavit, plaintiff has been unable to locate defendant directly but has successfully sent documents to a mail receiving agency contracted by defendants as well as the attorney who filed a trademark application for defendants. Dkt. No. 14.

2

**LEGAL STANDARD**

Rule 65(b) of the Federal Rules of Civil Procedure permits a court to issue a temporary restraining order without notice to the adverse party only where "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant...." Fed. R. Civ. P. 65(b)(1)(A). The movant's attorney must certify in writing "any attempts to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(B). These requirements "reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 438-39 (1974).

The standards for issuing a temporary restraining order and a preliminary injunction are the same. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n. 7 (9th Cir.2001). Like a preliminary injunction, a temporary restraining order may only issue if the movant establishes (1) a likelihood of success on the merits, (2) a likelihood that the movant will suffer irreparable harm in the absence of relief, (3) that the balance of equities tips in the movant's favor, and (4) that a restraining order is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The Ninth Circuit applies a "sliding scale" approach to preliminary injunctions such that a preliminary injunction can issue "where the likelihood of success is such that 'serious questions going to the merits were raised and the balance of hardships tips sharply in [plaintiff's] favor.' " *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1177 (9th Cir. 2021) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)).

A trial court weighing whether to issue a preliminary injunction "may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial." *Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009) (quoting *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir.1984)).

**DISCUSSION**

**A.  Likelihood of Success on the Merits**

To prevail on a trademark infringement or unfair competition claim, a plaintiff must show that (1) it has a valid, protectible trademark, and (2) the defendant's use of the mark is likely to cause confusion. 15 U.S.C. § 1125(a)(1)(A).

Here, plaintiff has submitted evidence that it owns U.S. Trademark Registration No. 4,156,859 for the PENETREX® word mark, which was registered on June 12, 2012. Sexton Decl. ¶¶ 10–12, Ex. A. "Registration of a mark on the Principal Register in the Patent and Trademark Office constitutes prima facie evidence of the validity of the registered mark and of [the registrant's] exclusive right to use the mark on the goods and services specified in the registration." *Applied Info. Scis. Corp. v. eBAY, Inc.*, 511 F.3d 966, 970 (9th Cir. 2007) (internal quotations omitted) (quoting *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1047 (9th Cir.1999)). Plaintiff has also submitted evidence of trade dress and the claimed design mark. Sexton Decl. ¶¶ 13–18, 20.

The Court "look[s] to the eight *Sleekcraft* factors for guidance in assessing the likelihood of consumer confusion: (1) strength of the protected mark; (2) proximity and relatedness of the goods; (3) type of goods and the degree of consumer care; (4) similarity of the protected mark and the allegedly infringing mark; (5) marketing channel convergence; (6) evidence of actual consumer confusion; (7) defendant's intent in selecting the allegedly infringing mark; and (8) likelihood of product expansion." *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1125 (9th Cir. 2014) (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir.1979), *abrogated on other grounds by Mattel Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 810 n. 19 (9th Cir.2003)). The plaintiff "need not satisfy every factor, provided that strong showings are made with respect to some of them." *Id.* (quoting *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 631 (9th Cir.2005)).

Here, Plaintiffs have made a strong showing of the first seven factors. The strength of a mark begins with its distinctiveness on a spectrum, where " the most distinctive marks—i.e., arbitrary and fanciful marks—receive the most trademark protection, whereas the least distinctive marks—i.e., generic marks—receive no trademark protection." *Id.* at 1126. "Suggestive and

4

descriptive marks lie between these two extremes, with suggestive marks being entitled to greater protection than descriptive marks." *Id.* The PENETREX trademark is at weakest a suggestive mark – while the consumer may use their imagination to determine that "Penetrex" implies penetration of the topical cream into the skin, the consumer must use her imagination to understand the mark's significance. *Id.* (concluding "POM" is a suggestive mark for a brand of pomegranate juice). While suggestive marks are "presumptively weak," they can be transformed by marketplace recognition into stronger marks. *Id.* Here, plaintiff has submitted evidence that it has used the PENETREX mark for a decade and a half. Sexton Decl. ¶ 5.

Both products at issue are topical joint creams. Sexton Decl. ¶¶ 23. They are relatively inexpensive products for which consumers could be expected to show a lower degree of care. *Id.* ¶¶ 24–26. The protected mark and the allegedly infringing mark are very similar; indeed, without a close reading the products are virtually indistinguishable. *See id.* ¶¶ 20–22. Both products are marketed and sold on Amazon, Facebook, and other e-commerce websites. *Id.* ¶¶ 22–23. Plaintiff has submitted evidence of consumer confusion, including that consumers "have complained directly to Biomax and publicly written bad reviews" because of defendant's products. *Id.* ¶¶ 42–43. And plaintiff has submitted evidence that in addition to designing a nearly-identical-looking product, defendant has appropriated plaintiff's advertisements for its own use, which suggests that defendant intended to create confusion. *See id.* ¶¶ 20–22, 33–34.

As plaintiff acknowledges, the eighth *Sleekcraft* factor – likelihood of expansion – is neutral in this case. Dkt. No. 12 at 14. However, as a whole the *Sleekcraft* factors weigh in plaintiff's favor and the "totality of facts" suggests that the likelihood of confusion in this case is high. *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1140 (9th Cir.2002).

Because plaintiff has made a strong showing that it owns a valid, protectable mark and that there is a high likelihood of confusion between plaintiff's mark and defendant's mark, plaintiff is likely to succeed on the merits.

At the hearing on this motion, plaintiff's attorney also explained that he had attempted to call a phone number listed on one of the Perfectx Facebook pages, which was unsuccessful.

5

### B.     Irreparable Harm

When a plaintiff establishes likelihood of success on the merits of a claim for trademark infringement under the Lanham Act, the plaintiff is "entitled to a rebuttable presumption of irreparable harm." 15 U.S.C. § 1116(a). Here, that presumption applies and has not been rebutted. Accordingly, the Court finds that plaintiff will suffer irreparable harm should an injunction not issue. This factor favors issuing the TRO.

### C.     Balance of Hardships

"Where the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense merits little equitable consideration." *Triad Sys. Corp. v. Se. Exp. Co.*, 64 F.3d 1330, 1338 (9th Cir. 1995) (internal punctuation omitted) (quoting *Concrete Mach. Co. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 612 (1st Cir.1988)). Here, the only identifiable harm to defendant is lost profits from selling products which have been shown likely to be infringing. Therefore, the balance of hardships weighs in favor of issuing the TRO.

### D.     Public Interest

The public interest favors a temporary restraining order. "In addition to the harm caused the trademark owner, the consuming public is equally injured by an inadequate judicial response to trademark infringement." *Playboy Enters., Inc. v. Baccarat Clothing Co.*, 692 F.2d 1272, 1275 (9th Cir. 1982). Plaintiff has put forth evidence that defendant falsely advertises its products, including by appropriating plaintiff's advertisements and by making false claims as to the origin and efficacy of defendant's products. Sexton Decl. at ¶¶ 33–40.

### E.     Notice

The Court finds that the requirements for notice are met. Rule 65(b) of the Federal Rules of Civil Procedure permits a court to issue a temporary restraining order without notice to the adverse party only where "specific facts in an affidavit or a verified complaint clearly show that immediate

6

and irreparable injury, loss, or damage will result to the movant...." Fed. R. Civ. P. 65(b)(1)(A). The movant's attorney must certify in writing "any attempts to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(B). Here, plaintiff's attorney submitted a declaration detailing extensive attempts to contact and serve defendants. Dkt. No. 14. Plaintiff searched for the New York address listed on a Facebook page purporting to belong to Perfectx and discovered the address was fictitious. *Id.* ¶ 4. Plaintiff engaged a process to serve defendants at a San Francisco address provided on a second Facebook page purporting to belong to defendants, "which the process server reported was a commercial mail receiving agency whose manager on-site confirmed [it] was engaged by defendant." *Id.* ¶ 4, Ex. A. Plaintiff also served the attorney listed on a United States trademark application for PERFECTX and the address for the PERFECTX trademark applicant in China. *Id.* ¶¶ 7–8. Included in the initial documents served was a notice plaintiff intended to seek a TRO and preliminary injunction. *Id.* ¶¶ 6–8. Plaintiff also served the San Francisco address and the US trademark attorney with copies of the TRO application. *Id.* ¶¶ 9. Plaintiff and the Court have received no response.

Plaintiff having taken every practicable effort to locate and notice defendants, the Court finds that the notice requirements of Rule 65 are met.

## CONCLUSION

Plaintiff's motion is **GRANTED**, according to the terms set forth below:

## TEMPORARY RESTRAINING ORDER

(1) Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with Defendant having notice of this Order are hereby temporarily restrained:

    a. From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing a mark that is identical or confusingly similar to the PENETREX Trademarks identified in the Complaint in this matter; and

    b. From secreting, concealing, destroying, selling off, transferring, or otherwise disposing

of:

(i) any products bearing marks that are identical or confusingly similar to the PENETREX Trademarks,

(ii) any evidence relating to the manufacture, importation, sale, off er for sale, distribution, or transfer of any products bearing marks that are identical or confusingly similar to the PENETREX Trademarks

(2) Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with Defendant having notice of this Order shall immediately discontinue the use of marks that are identical or confusingly similar to the PENETREX Trademarks, on or in connection with all Internet websites owned and operated, or controlled by them or in connection with any ecommerce platforms owned by third parties where Defendant offers goods for sale;

(3) Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with Defendant having notice of this Order shall immediately discontinue the use of marks that are identical or confusingly similar to the PENETREX Trademarks in association with ecommerce websites, domain name extensions, metatags, or other markers within website source code, from use on any webpage (including as the title of any web page), any advertising links to other websites, from search engines' databases or cache memory, and any other form of use of such terms which is visible to a computer user or serves to direct computer searches to websites registered by, owned, operated, or controlled by Defendant or in connection with any ecommerce platforms owned by third parties where Defendant offers goods for sale;

(4) This Temporary Restraining Order shall remain in effect until the date for the hearing on the Motion for Preliminary Injunction set forth below, or until such further dates as set by the Court or stipulated to by the parties.

**PRELIMINARY INJUNCTION**

A hearing is set before this Court in the United States Courthouse located at Courtroom 1 – 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102 via Zoom on Tuesday, July 11, 2023 at 11:00 a.m., on Plaintiff's Motion for a Preliminary Injunction restraining Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with Defendant from engaging in the activities that are subject of the above Temporary Restraining Order.

Plaintiff shall serve a copy of the TRO Application and this Order on Defendant via its only available address, the San Francisco address provided in ¶ 9 of the Complaint. Such notice so given shall be deemed good and sufficient service thereof. Any response or opposition to Plaintiffs Motion for Preliminary Injunction must be filed and served on Plaintiff's counsel forty-eight (48) hours prior to the hearing set for Tuesday, July 11, 2023 at 11:00 a.m. and filed with the Court, along with Proof of Service. Plaintiff shall file any Reply Memorandum on or before July 10, 2023. The above dates may be revised upon stipulation by all parties and approval of this Court. Defendant is hereby on notice that failure to appear at the hearing may result in the imposition of a preliminary injunction against it pursuant to Fed. R. Civ. P. 65.

**IT IS SO ORDERED**.

Dated: June 27, 2023

SUSAN ILLSTON
United States District Judge