UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BIOMAX HEALTH PRODUCTS LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>PERFECTX USA,<br><br>    Defendant. | Case No. 23-cv-02834-SI<br><br>**PRELIMINARY INJUNCTION** |

On July 11, 2023, the Court held a hearing to determine whether to convert the temporary restraining order issued in this case on June 27, 2023 into a preliminary injunction. Having considered the arguments of counsel and the papers submitted, the Court hereby **GRANTS** the motion.

**BACKGROUND**

Plaintiff alleges as follows. Plaintiff Biomax Health Products LLC markets and sells topical joint and muscle therapy cream under the PENETREX mark. Complaint, Dkt. No. 1, at ¶ 21. Plaintiff has registered the PENETREX word mark. *Id.* ¶¶ 26–29. Since May 2022, Plaintiff has marketed its products with what it calls the PENETREX Design Mark, which consists of a thick line with color bands of varying thickness in dark red, dark blue, gray, blush, dark red, gray, and dark blue. *Id.* ¶¶ 33–36. Plaintiff's most popular product is its PENETREX Intensive Concentrate Cream. *Id.* ¶¶ 37–39. The Intensive Concentrate Cream is sold in a white, cylindrical jar with rounded edges. *Id.* ¶ 38. The label consists of a white background and, from top to bottom, the color band, "Penetrex®" in large, bold, black font, "INTENSIVE CARE CREAM" in all capital letters in smaller black font, "Joint & Muscle Therapy" in bold dark red font, and a description of some

1  ingredients and the size of the contents in much smaller black font. *Id.* The fonts used are all sans
2  serif. *Id.*

3        Beginning around February 2023, defendants began marketing and selling a topical cream
4  under the name PERFECTX Intensive Concentrate Cream. *Id.* ¶ 40. Like the PENETREX®
5  Intensive Concentrate Cream, the PERFECTX cream comes in a white, cylindrical jar with rounded
6  edges. *Id.* The label consists of a white background and, from top to bottom, the color band,
7  "Perfectx" in large, bold, black font, "INSTENSIVE CONCENTRATE CREAM" in all capital
8  letters in smaller black font, "Joint & Bone Therapy" in bold dark red font, and a description of
9  ingredients and the size of the contents in much smaller black font. *Id.* The fonts used are sans serif
10 and strikingly similar to the fonts used on the label of the PENETREX Intensive Care Cream. *Id.*

11       Plaintiff and defendant market and sell their products through the same channels, such as
12 Amazon and Facebook ads. *Id.* ¶ 43. Both products are "relatively inexpensive." *Id.* ¶ 44.
13 Defendant has appropriated images from plaintiff's advertisements to use in its own and has made
14 "outlandish and false claims of efficacy" of its products. *Id.* ¶ 54–58. Plaintiff alleges that
15 defendant's products are "of a significantly lower quality" than plaintiff's and that confusion of the
16 products has harmed plaintiff's reputation and sales. *Id.* ¶¶ 49–52. Plaintiff also alleges defendant
17 falsely claims its product is made in the United States. *Id.* ¶¶ 60–62. Plaintiff alleges defendant has
18 willfully confused consumers, who have written to plaintiff complaining of the poor quality of
19 defendant's products. *Id.* ¶¶ 63–65.

20       Plaintiff filed the complaint on June 8, 2023. Plaintiff brings federal claims for trademark
21 infringement, unfair competition, and false advertising, and California claims for violation of the
22 California UCL, California false advertising law, and California common law. *Id.* ¶¶ 69–131. On
23 June 22, 2023, plaintiff filed a motion for preliminary injunction and a declaration explaining
24 plaintiff's attempts to serve defendants. Dkt. Nos. 12, 14. Per the affidavit, plaintiff has been unable
25 to locate defendant directly but has successfully sent documents to a mail receiving agency
26 contracted by defendants as well as the attorney who filed a trademark application for defendants.
27 Dkt. No. 14.
28

**LEGAL STANDARD**

The standards for issuing a temporary restraining order and a preliminary injunction are the same. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n. 7 (9th Cir.2001). A preliminary injunction may only issue if the movant establishes (1) a likelihood of success on the merits, (2) a likelihood that the movant will suffer irreparable harm in the absence of relief, (3) that the balance of equities tips in the movant's favor, and (4) that a restraining order is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The Ninth Circuit applies a "sliding scale" approach to preliminary injunctions such that a preliminary injunction can issue "where the likelihood of success is such that 'serious questions going to the merits were raised and the balance of hardships tips sharply in [plaintiff's] favor.' " *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1177 (9th Cir. 2021) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)).

A trial court weighing whether to issue a preliminary injunction "may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial." *Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009) (quoting *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir.1984)).

**DISCUSSION**

**A.     Likelihood of Success on the Merits**

To prevail on a trademark infringement or unfair competition claim, a plaintiff must show that (1) it has a valid, protectible trademark, and (2) the defendant's use of the mark is likely to cause confusion. 15 U.S.C. § 1125(a)(1)(A).  Here, plaintiff has submitted evidence that it owns U.S. Trademark Registration No. 4,156,859 for the PENETREX® word mark, which was registered on June 12, 2012.  Sexton Decl. ¶¶ 10–12, Ex. A. "Registration of a mark on the Principal Register in the Patent and Trademark Office constitutes prima facie evidence of the validity of the registered mark and of [the registrant's] exclusive right to use the mark on the goods and services specified in the registration." *Applied Info. Scis. Corp. v. eBAY, Inc.*, 511 F.3d 966, 970 (9th Cir. 2007) (internal quotations omitted) (quoting *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036,

3

1047 (9th Cir.1999)). Plaintiff has also submitted evidence of trade dress and the claimed design mark. Sexton Decl. ¶¶ 13–18, 20.

The Court "look[s] to the eight *Sleekcraft* factors for guidance in assessing the likelihood of consumer confusion: (1) strength of the protected mark; (2) proximity and relatedness of the goods; (3) type of goods and the degree of consumer care; (4) similarity of the protected mark and the allegedly infringing mark; (5) marketing channel convergence; (6) evidence of actual consumer confusion; (7) defendant's intent in selecting the allegedly infringing mark; and (8) likelihood of product expansion." *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1125 (9th Cir. 2014) (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir.1979), *abrogated on other grounds by Mattel Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 810 n. 19 (9th Cir.2003)). The plaintiff "need not satisfy every factor, provided that strong showings are made with respect to some of them." *Id.* (quoting *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 631 (9th Cir.2005)).

Here, Plaintiffs have made a strong showing of the first seven factors. The strength of a mark begins with its distinctiveness on a spectrum, where " the most distinctive marks—i.e., arbitrary and fanciful marks—receive the most trademark protection, whereas the least distinctive marks—i.e., generic marks—receive no trademark protection." *Id.* at 1126. "Suggestive and descriptive marks lie between these two extremes, with suggestive marks being entitled to greater protection than descriptive marks." *Id.* The PENETREX trademark is at weakest a suggestive mark – while the consumer may use their imagination to determine that "Penetrex" implies penetration of the topical cream into the skin, the consumer must use her imagination to understand the mark's significance. *Id.* (concluding "POM" is a suggestive mark for a brand of pomegranate juice). While suggestive marks are "presumptively weak," they can be transformed by marketplace recognition into stronger marks. *Id.* Here, plaintiff has submitted evidence that it has used the PENETREX mark for a decade and a half. Sexton Decl. ¶ 5.

Both products at issue are topical joint creams. Sexton Decl. ¶¶ 23. They are relatively inexpensive products for which consumers could be expected to show a lower degree of care. *Id.* ¶¶ 24–26. The protected mark and the allegedly infringing mark are very similar; indeed, without a close reading the products are virtually indistinguishable. *See id.* ¶¶ 20–22. Both products are

4

marketed and sold on Amazon, Facebook, and other e-commerce websites. *Id.* ¶¶ 22–23. Plaintiff has submitted evidence of consumer confusion, including that consumers "have complained directly to Biomax and publicly written bad reviews" because of defendant's products. *Id.* ¶¶ 42–43. And plaintiff has submitted evidence that in addition to designing a nearly-identical-looking product, defendant has appropriated plaintiff's advertisements for its own use, which suggests that defendant intended to create confusion. *See id.* ¶¶ 20–22, 33–34.

As plaintiff acknowledges, the eighth *Sleekcraft* factor – likelihood of expansion – is neutral in this case. Dkt. No. 12 at 14. However, as a whole the *Sleekcraft* factors weigh in plaintiff's favor and the "totality of facts" suggests that the likelihood of confusion in this case is high. *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1140 (9th Cir.2002).

Because plaintiff has made a strong showing that it owns a valid, protectable mark and that there is a high likelihood of confusion between plaintiff's mark and defendant's mark, plaintiff is likely to succeed on the merits.

**B.  Irreparable Harm**

When a plaintiff establishes likelihood of success on the merits of a claim for trademark infringement under the Lanham Act, the plaintiff is "entitled to a rebuttable presumption of irreparable harm." 15 U.S.C. § 1116(a). Here, that presumption applies and has not been rebutted. Accordingly, the Court finds that plaintiff will suffer irreparable harm should an injunction not issue. This factor favors issuing the preliminary injunction.

**C.  Balance of Hardships**

"Where the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense merits little equitable consideration." *Triad Sys. Corp. v. Se. Exp. Co.*, 64 F.3d 1330, 1338 (9th Cir. 1995) (internal punctuation omitted) (quoting *Concrete Mach. Co. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 612 (1st Cir.1988)). Here, the only identifiable harm to defendant is lost profits from selling products which have been shown likely to be infringing. Therefore, the balance of hardships weighs

5

in favor of issuing the preliminary injunction.

**D.     Public Interest**

The public interest favors a preliminary injunction. "In addition to the harm caused the trademark owner, the consuming public is equally injured by an inadequate judicial response to trademark infringement." *Playboy Enters., Inc. v. Baccarat Clothing Co.*, 692 F.2d 1272, 1275 (9th Cir. 1982). Plaintiff has put forth evidence that defendant falsely advertises its products, including by appropriating plaintiff's advertisements and by making false claims as to the origin and efficacy of defendant's products. Sexton Decl. at ¶¶ 33–40.

**CONCLUSION**

The Court hereby **ORDERS** as follows:

**PRELIMINARY INJUNCTION**

(1) Pending the conclusion of this litigation, defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with Defendant having notice of this Order are hereby enjoined and restrained:

> a. From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing a mark that is identical or confusingly similar to the PENETREX Trademarks identified in the Complaint in this matter; and b. From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of:
>
> > (i) any products bearing marks that are identical or confusingly similar to the PENETREX Trademarks,
> >
> > (ii) any evidence relating to the manufacture, importation, sale, off er for sale, distribution, or transfer of any products bearing marks that are identical or confusingly similar to the PENETREX Trademarks;

(2) Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with Defendant having notice of this Order shall immediately discontinue the use of marks that are identical or confusingly similar to the

6

1   PENETREX Trademarks, on or in connection with all Internet websites owned and operated, or
2   controlled by them or in connection with any ecommerce platforms owned by third parties where
3   Defendant offers goods for sale;

4       (3) Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all
5   persons in active concert or participation with Defendant having notice of this Order shall
6   immediately discontinue the use of marks that are identical or confusingly similar to the
7   PENETREX Trademarks in association with ecommerce websites, domain name extensions,
8   metatags, or other markers within website source code, from use on any webpage (including as the
9   title of any web page), any advertising links to other websites, from search engines' databases or
10  cache memory, and any other form of use of such terms which is visible to a computer user or serves
11  to direct computer searches to websites registered by, owned, operated, or controlled by Defendant
12  or in connection with any ecommerce platforms owned by third parties where Defendant offers
13  goods for sale.

14  **IT IS SO ORDERED**.

15  Dated: July 11, 2023

17  SUSAN ILLSTON
    United States District Judge